Mary Elizabeth CASTIBLANCO

v.

**ENVIRONMENTAL & DEMOLITION SERVICES, INC., et al.**

**No. CIV. JFM–01–2106.**

United States District Court, D. Maryland.

Nov. 12, 2001.

Victor E. Long, Regan, Halperin and Long, PLLC, Washington, DC, for plaintiff.

D. Stephenson Schwinn, Rachel Bob, Jordan, Coyne and Savits, LLP, Washington, DC., for defendant.

## MEMORANDUM

MOTZ, District Judge.

Jhon Jairo Castiblanco was electrocuted while painting a building in the Acadia National Park on September 18, 2000. Castiblanco was working as a subcontractor of Environmental & Demolition Services, Inc. ("EDS"). EDS had entered into a contract with the National Park Service to remove lead paint, abate asbestos, and repaint building exteriors on three ranger buildings in Acadia National Park. Castiblanco was electrocuted when a 28 foot aluminum ladder he was using came into contact with a 7,200 volt electrical power line.

Mary Elizabeth Castiblanco, as personal representative of her husband's estate, instituted this action against EDS in the Circuit Court for Baltimore City, Maryland. When EDS filed a third-party complaint against the United States Department of the Interior, the United States removed the action to this court. The United States has now filed a motion to dismiss. The motion will be granted.

■ The United States has not waived sovereign immunity under the Federal Tort Claims Act for acts performed by independent contractors. 28 U.S.C. § 2671. There is no question that EDS

was an independent contractor. National Park Service officials did not supervise its work on a day-to-day basis and, insofar as safety was concerned, the contract required EDS to implement an accident prevention program. Moreover, the contract required EDS to procure and maintain liability insurance.

Although not conceding that EDS is an independent contractor, plaintiff's primary argument contends that Maine law (which the parties implicitly agree applies since Acadia National Park is located in Bar Harbor, Maine) imposes a duty upon landowners to use reasonable care to prevent risks arising from known and obvious conditions that the landowner should reasonably anticipate would cause harm to others. *Colvin v. A.R. Cable Services–ME, Inc.*, 697 A.2d 1289, 1291 (Me.1997); Restatement (2d) of Torts, §§ 343 & 343A (1965). EDS alleges that this duty required the National Park Service either to warn users of the risk posed by the high voltage line and/or to de-energize the high voltage line in the vicinity of the work.

Clearly, the National Park Service was not under any duty to advise each and every person working at the site that a high voltage line is dangerous. Everyone knows that a high voltage line is dangerous.[1] Moreover, since EDS was contractually obligated to assure the safety of persons working at the site, the National Park Service could reasonably assume that to the extent that the voltage line presented a specific hazard to those workers, EDS would warn them about it and train them to avoid it.

For the same reason, it was EDS that had the responsibility to contact the National Park Service to request it to de-energize the voltage line if that line was presenting a particular hazard to the workers. The National Park Service had no duty to monitor what was being done at the work site to assure that safety measures were being undertaken by EDS in accordance with its contractual obligations. *See Wood v. United States*, 148 F.Supp.2d 68, 77–78 (D.Me.2001).

A separate order granting the United States' motion to dismiss is being entered herewith. The order also remands the action to the Circuit Court for Baltimore City since the basis for federal jurisdiction has now been dissipated.

---

1. In one sentence in its opposition memorandum, EDS refers to the power line as a "latent hazard." That seems to have been a misstatement. Self-evidently, an overhead power line is obvious, not latent. Moreover, the Restatement principle upon which EDS relies applies to "known and obvious conditions."